


UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

Case No.   CV 06-6434 DSF (SHx)   .   Date   July 3, 2007

Title   *Nicherie, et al. v. Pellicano, et al.*

Present: The Honorable   DALE S. FISCHER, United States District Judge

| Paul D. Pierson | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**   (IN CHAMBERS) Order Re the Motion of Lola Krugel, Widow of Earl Leslie Krugel for Monetary Sanctions in the Amount of $12,250 Against Plaintiff Daniel Nicherie and His Counsel Marguerite Buckley Pursuant to Fed. R. Civ. P. 11

## I. INTRODUCTION

In recent months, Plaintiff Daniel Nicherie's counsel – Marguerite Buckley ("Counsel") – has demonstrated no interest in prosecuting this suit. In January 2007, she failed to oppose Verizon Global Networks, Inc., MCI Communications Services, Inc., Qwest Communications Corp., and Kenneth A. Pratt's motions to dismiss. In March 2007, she again failed to oppose motions to dismiss filed by numerous additional defendants. On March 28, 2007, the Court denied Plaintiff's ex parte application for a stay, noting in pertinent part:

> The application for a continuance is untimely and lacking in foundation. Counsel has been aware of the defects in the pleadings since at least November 2006. Nevertheless, she has filed two subsequent pleadings that are nearly identical – and thus have identical defects.
>
> Ms. Buckley states in her declaration that she was only allowed to visit Mr. Nicherie from 8:00 a.m. to 1:00 p.m. on Mondays, Wednesdays, Fridays, and Sundays – or a total of 20 hours per week. Based on this Court's experience, 20 hours per week would be sufficient to consult one's client concerning the merits of his claims, at least at the initial pleading stage. Ms. Buckley claims that she had to share that time with Mr. Nicherie's paralegal, investigator, and attorney. However, neither the paralegal nor investigator should have been performing services in the criminal matter after Mr. Nicherie entered his 11(c)(1)(C) plea on December 12, 2006. Mr. Nicherie's criminal counsel, Kiana Sloan-Hillier, withdrew

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

as his counsel at his sentencing on March 5, 2007. Plaintiff[] ha[s] had ample time to prepare [his] opposition to defendants' motion[s] to dismiss. (Order Denying Ex Parte Application Mar. 28, 2007.)

In a similar vein, on March 30, 2007, the Court "ordered [Plaintiff] . . . to show cause in writing no later than April 30, 2007 why all Doe Defendants who ha[d] not been identified and served within[] 120 days of the filing of the First Amended Complaint should not be dismissed." (OSC Re Dismissal of Count 7 & of Unnamed & Unserved Doe Defs. Mar. 30, 2007.) Counsel did not respond to the order to show cause. In May 2007, she failed to oppose motions to dismiss filed by Judah Hertz and Ami Shafrir. On May 23, 2007, the Court granted the Motion to Dismiss of Defendant Estate of Earl Leslie Krugel. Counsel failed to oppose the motion.

Presently before the Court is the Motion of Lola Krugel, Widow of Earl Leslie Krugel for Monetary Sanctions in the Amount of $12,250 Against Plaintiff Daniel Nicherie and His Counsel Marguerite Buckley Pursuant to Fed. R. Civ. P. 11 ("Motion"), filed June 1, 2007. It comes as no surprise that Counsel has once again failed to file an opposition.[1] She also failed to appear at the hearing.

## II. FACTUAL BACKGROUND

### A. Plaintiff's Factual Allegations

Plaintiff's Third Amended Complaint ("Complaint" or "TAC") alleges twenty causes of action against dozens of defendants. Among the defendants are telecommunications companies, municipalities, an attorney, the Jewish Defense League, Anthony Pellicano, members of purported crime families, and Priscilla Presley. The sprawling Complaint alleges a wide-ranging conspiracy on the part of the defendants to extort Plaintiff. As described below, six claims are alleged against the Estate of Earl Krugel (the "Estate").

The Second Cause of Action alleges violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968. This claim is brought against approximately thirty-five defendants, including the City of Los Angeles, the City of Beverly Hills, Priscilla Presley, and the Estate. (TAC ¶ 68.) Plaintiff alleges that Defendant Pellicano wiretapped his homes and businesses, and solicited employment from Defendant Ami Shafrir. (TAC ¶ 70.) Shafrir allegedly thereby obtained personal information about Plaintiff and engaged in extortion against him. (TAC ¶ 70.) Plaintiff alleges that, after "a hand grenade was placed under the hood of [his] mother's vehicle,"

---

[1] The Court deems the lack of opposition to be consent to the motion. Local Rule 7-12; see also Ghazali v. Moran, 46 F.3d 52, 53-54 (9th Cir. 1995); Brydges v. Lewis, 18 F.3d 651, 652 (9th Cir. 1993). Nevertheless, the Court further discusses the merits.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL
**PRIORITY SEND**

he paid Pellicano $200,000.00 and agreed to drop a lawsuit against Shafrir. (TAC ¶ 71.) Regarding Earl Krugel, Plaintiff alleges only:

> Defendants Pellicano, Arneson, Stevens, Pratt, Mileikowsky, Proctor, Green, Klein, Ami Shafrir, Raffi Cohen, Hai and Assaf Waknine, Hertz, Mouki Cohen, Orgad, Haimovitch, Chameleon Strategic Operations (both entities), Sloan, Rubin, Barry and Earl Krugel, and JDL threatened Plaintiff or caused Plaintiff and his family to be threatened with violence in the commission of extortion regarding Plaintiff's business dealings, including but not limited to the conducting of physical raids of 8335 Sunset Boulevard, Los Angeles and 8670 Wilshire Boulevard, Beverly Hills in which Sheldon Sloan, an attorney and private investigators from Chameleon Strategic Operations, and/or Chameleon Strategic Operations Inc. were used to convince responding police officers including defendant Stevens that these burglaries, trespasses, robberies and extortions being committed in their presence were merely "civil disputes[]".

(TAC ¶ 73.) Plaintiff does not explain Earl Krugel's role in the extortion scheme with any detail, despite having filed several amended complaints.

Plaintiff's Fifth Cause of Action is brought against all forty-six defendants. Plaintiff alleges violation of 42 U.S.C. § 1985, which "proscribes conspiracies to interfere with civil rights." Sanchez v. City of Santa Ana, 936 F.2d 1027, 1039 (9th Cir. 1990). Plaintiff alleges that "Defendants conspired to prevent Plaintiff [from] exercising his rights under the Constitution of the United States, the Constitution of the State of California, and the International Covenant on Civil and Political Rights in violation of 42 USC 1985(3)." (TAC ¶ 100.) Although "section 1985(3) applies only to conspiracies based on racial bias," Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1255 (9th Cir. 1997), nothing in the Third Amended Complaint even remotely suggests that the alleged web of conspirators were motivated by racial bias. Plaintiff also alleges that "Defendants conspired to prevent Plaintiff from testifying as a witness in criminal proceedings which would have been brought against them as a result of his activities as a federal whistleblower, in violation of his rights under 42 USC 1985(2)." (TAC ¶ 99.) Plaintiff does not explain the nature of the "criminal proceedings [that] would have been brought" against all forty-six defendants, and does not explain Earl Krugel's role in the alleged conspiracy.

Plaintiff's Eighth Cause of Action alleges violation of California Civil Code § 52.1, under which individuals may bring suit for infringement "of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of [California] . . . ." Cal. Civ. Code § 52.1(b). Plaintiff alleges violation of numerous state and federal rights. (TAC ¶ 109.) Plaintiff states:

> Threats of violence and intimidation were repeatedly made against Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

and his family by the Defendants including but not limited to the use of a hand grenade and C-4 explosives, the use of a vicious dog named 'Uzi' owned by Defendant Klein, the use of numerous thugs acting as so-called 'investigators' under the auspices of Chameleon Strategic Operations, and the threats of the Bonanno Crime Family made through an officer of Traffix, Inc. as well as a west coast Bonanno Crime Family soldier who was video-taped in the commission of extortion by law enforcement authorities against Plaintiff.
(TAC ¶ 110.) No mention is made of Earl Krugel.

Plaintiff's Tenth and Eleventh Causes of Action allege that all defendants engaged in unlawful wiretapping in violation of state and federal law. (TAC ¶¶ 115-120.) Plaintiff does not allege any facts suggesting that Earl Krugel was involved in the wiretapping.

Finally, Plaintiff's Twelfth Cause of Action alleges "invasion of privacy and indemnification" against all defendants. (TAC ¶¶ 121-129.) Plaintiff claims that the telecommunications defendants "allowed fraudulent and bogus charges to be billed to their clients." (TAC ¶ 124.) Plaintiff requests an order "protecting and shielding [him] from liability to these defrauded individuals." (TAC ¶ 124.) Plaintiff appears to allege that Ami and Sarit Shafrir were involved in the scheme, and that they have hidden their assets in an attempt to escape liability. (TAC ¶¶ 123, 126.) Absolutely no mention is made of Earl Krugel.

### B. Earl Krugel

Earl Krugel was born on November 24, 1942. (Declaration of Lola Krugel ("Krugel Decl.") ¶ 3.) He married Lola Krugel on August 31, 1997. (Krugel Decl. ¶ 4.) Mr. Krugel was arrested on December 12, 2001. (Krugel Decl. ¶ 5.) On that same date, he was brought before United States Magistrate Judge Victor B. Kenton, and an Order of Detention was issued. (Krugel Decl. ¶ 5.) Mr. Krugel was indicted on January 10, 2002. (Krugel Decl. ¶ 5.) On January 31, 2003, Mr. Krugel entered into a plea agreement with the Department of Justice, wherein he pled guilty to violations of 18 U.S.C. §§ 241 (conspiracy against civil rights) and 844(h)(2) (carrying an explosive during the commission of a federal felony). (Krugel Decl. ¶ 7.) On September 26, 2005, he was sentenced to twenty years in federal custody. (Krugel Decl. ¶ 5, Ex. 2.) The plea agreement was appealed on September 23, 2005. (Krugel Decl. ¶ 9.) After the plea agreement was entered, Mr. Krugel was transferred to the Federal Correctional Institution in Phoenix, Arizona. (Krugel Decl. ¶ 10.) He was murdered three days later, on November 4, 2005. (Krugel Decl. ¶ 10, Ex. 3.) Because an appeal was pending at the time of Mr. Krugel's murder, United States District Judge Ronald Lew vacated the judgment and dismissed the indictment on March 2, 2006. (Krugel Decl. ¶ 11.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

### III. LEGAL STANDARD

Rule 11 of the Federal Rules of Civil Procedure provides:
By presenting to the court . . . a pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, –

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b). Sanctions should be imposed where "a) the paper is filed for an improper purpose, or b) the paper is 'frivolous.'" Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1362 (9th Cir. 1991). "Although the 'improper purpose' and 'frivolousness' inquiries are separate and distinct, they will often overlap since evidence bearing on frivolousness or non-frivolousness will often be highly probative of purpose." Id. "The standard governing both inquiries is objective." Id. "The word 'frivolous' does not appear anywhere in the text of the Rule; rather, it is a shorthand that [the Ninth Circuit] has used to denote a filing that is both baseless and made without a reasonable and competent inquiry." Id.

"[C]omplaints are not filed for an improper purpose if they are non-frivolous." Id. "Since subjective evidence of the signer's purpose is to be disregarded, the 'improper purpose' inquiry subsumes the 'frivolousness' inquiry in this class of cases." Id. (internal citation omitted). A pleading that is frivolous only in part may be sanctioned. Id. at 1365. However, "a minor or insignificant allegation or subclaim should not render a pleading sanctionable." Id. at 1365 n.4.

Rule 11 includes a safe harbor provision, which provides: "A motion for sanctions under this rule . . . shall not be filed with or presented to the court unless, within 21 days after service of the motion . . . the challenged paper, claim, defense, contention allegation, or denial is not withdrawn or appropriately corrected." Fed. R. Civ. P. 11(c)(1). "The purpose of the safe harbor . . . is to give the offending party the opportunity, within 21 days after service of the motion for sanctions, to withdraw the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

offending pleading and thereby escape sanctions." Barber v. Miller, 146 F.3d 707, 710 (9th Cir. 1998) (emphasis omitted).

## III. DISCUSSION

### A. Mrs. Krugel Has Complied with the Safe Harbor Provision of Rule 11

On May 10, 2007, Mrs. Krugel served a draft copy of the Motion on Plaintiff. (Declaration of Robert Nida ("Nida Decl.") ¶ 12.) The Motion was filed on June 1, 2007. During the intervening period, Counsel failed to withdraw the claims against the Estate. Mrs. Krugel has complied with Rule 11's safe harbor provision. She also failed to respond to attempts to "meet and confer" as required by Local Rule 7-3 and this Court's Standing Order. (Nida Decl. ¶¶ 5-11.)

### B. Plaintiff's Claims Against the Estate are Frivolous

Plaintiff's claims against the Estate are frivolous.

First, a reasonable inquiry would have revealed that, as a matter of law, the Estate lacked the capacity to be sued. Federal Rule of Civil Procedure 17(b) provides that "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Had Counsel conducted even a minimal amount of legal research, she would have necessarily come to the conclusion that "[t]he 'Estate' of a decedent is not an entity known to [California] law." Lazar v. Estate of Lazar, 208 Cal. App. 2d 554, 557 (1962). "An 'estate' is not a legal entity and is neither a natural nor artificial person. It is merely a name to indicate the sum total of the assets and liabilities of a decedent, or of an incompetent, or of a bankrupt. An 'estate' can neither sue nor be sued." Id. (quoting Estate of Bright v. W. Air Lines, Inc., 104 Cal. App. 2d 827, 828-29 (1951)) (internal alterations omitted); see also Von Gibson v. Lynch, 197 Cal. App. 3d 725, 730 n.4 (1988) ("At common law an estate is not a person or entity and cannot be sued . . . , and the action would necessarily be against the executor or administrator.").

Second, a reasonable and competent factual inquiry would have revealed that no estate was opened after Mr. Krugel's death. In fact, Mr. Krugel was destitute at the time of his murder. (See Krugel Decl. ¶ 12.) He had expended all of his assets on his defense, and as a result, "[h]e had no money, real property, personal property, interest in investments, community property or separate property when he died." (Krugel Decl. ¶ 12.) Mr. Krugel's indigence was a matter of public record: in January 2005, "[d]ue to [his] indigent status," Judge Lew relieved Earl Krugel's private counsel and referred the case to the Federal Defender's Office. (Krugel Decl. Ex. 5.) Because he was "penniless" at death, no formal estate was opened. (Krugel Decl. ¶ 12). No one was appointed to "become the administrator, executor, trustee or conservator of the Estate of Earl Krugel . . . ." (Krugel Decl. ¶ 14.) Based on the foregoing, it is evident that, after

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

performing a reasonable and competent factual inquiry, no attorney could have determined that Mrs. Krugel – or the nonexistent Estate – were properly the subject of Plaintiff's lawsuit. Given Earl Krugel's murder, and his obvious indigence, Plaintiff's naming of the Estate cannot be considered merely a pleading error. Rather, because no estate was opened, Plaintiff's claims against the Estate are patently baseless and implausible.[2] For that reason, an award of sanctions is appropriate. See Rachel v. Banana Republic, Inc., 831 F.2d 1503, 1508 (9th Cir. 1987) (stating that a plaintiff is subject to Rule 11 sanctions where joinder of a defendant is "baseless" or "lacking in plausibility"); see also Cmty. Elec. Serv. Co. of Los Angeles, Inc. v. Nat'l Elec. Contractors Ass'n, Inc., 869 F.2d 1235, 1245 (9th Cir. 1989) ("To warrant sanctions, joining the party must be baseless or lacking in plausibility."), overruled on other grounds by Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1365 (9th Cir. 1990).

### C. Amount of Sanctions; Apportionment of Liability

Sanctions imposed under Rule 11 "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(2). "[T]he sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Id. "When the sanctions award is based upon attorney's fees and related expenses, an essential part of determining the reasonableness of the award is inquiring into the reasonableness of the claimed fees. Recovery should never exceed those expenses and fees that were reasonably necessary to resist the offending action. . . . [T]he court must make some evaluation of the fee breakdown submitted by counsel." In re Yagman, 796 F.2d 1165, 1184-85 (9th Cir. 1986).

The Court has no doubt that an award of reasonable attorneys' fees is "warranted for effective deterrence." Fed. R. Civ. P. 11(c)(2). Plaintiff, through Counsel, has asserted twenty claims against dozens of defendants, prompting many of the defendants to file motions to dismiss. Despite having initiated this flurry of activity, Plaintiff and Counsel have failed to prosecute this suit in any meaningful sense. Counsel has not even bothered to file an opposition to the Motion. Defendants have doubtless incurred tens of thousands of dollars in legal fees as a result of Plaintiff's actions. Counsel has also

---

[2] Mrs. Krugel, having been served with the TAC, was not required to risk having a default taken, a default judgment entered, and her assets liened, in reliance on this legal principle. Her response was appropriate.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

caused the Court to expend a great deal of judicial resources on this matter. Given the pattern of misconduct, and the utterly baseless nature of the claims against the Estate, an award of attorneys' fees is entirely appropriate.

Mrs. Krugel requests $10,150 in attorneys' fees, amounting to twenty-nine hours of work at a rate of $350 per hour. (Nida Decl. ¶¶ 15, 17.) Her counsel – Robert Nida – states that his regular rate is $350 per hour, and that this rate is commensurate with his level of skill and education. (Nida Decl. ¶ 15.) The Motion is well-prepared, and the Court finds that Mr. Nida's $350 rate is reasonable. Mr. Nida states that, to date, he has performed the following work on this matter: (1) meeting and communication with Mrs. Krugel (2 hours); (2) review of the Court's docket, including review of previous orders, the Court's Standing Order, and Plaintiff's various pleadings (2 hours); (3) drafting Mrs. Krugel's Motion to Dismiss, and performing relevant factual and legal research (16½ hours); (4) attempting to meet and confer with Counsel, and drafting three letters to that effect (1 hour); (5) drafting a notice of interested parties and reviewing the Local Rules (½ hour); (6) researching and drafting initial disclosures pursuant to Federal Rule of Civil Procedure 26 (1 hour); and (7) researching and drafting the Motion (6 hours). (Nida Decl. ¶ 16.) The Court finds that the length of time spent on these various tasks is reasonable, and that each of the tasks was "reasonably necessary to resist the offending action." In re Yagman, 796 F.3d at 1185. The Court also notes that it is proper to award Mrs. Krugel fees incurred in bringing the Motion itself. See Fed. R. Civ. P. 11(c)(1)(A) ("If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion."); Margolis v. Ryan, 140 F.3d 850, 855 (9th Cir. 1998) ("[T]he district court did not err by including in the amount awarded the costs and fees borne by [the moving party] in bringing the motion for sanctions."). In the interests of deterring future misconduct, the Court awards Mrs. Krugel $10,150 in attorneys' fees for the twenty-nine hours of work spent defending this action and preparing the Motion.

Mrs. Krugel also requests an award of "some expenses for delivery services, electronic research and paper fees, copying, etc." (Nida Decl. ¶ 17.) But she fails to itemize these expenses, and it appears that they are in fact not included in the total amount requested. (See Nida Decl. ¶ 17.) The Court declines Mrs. Krugel's request to award expenses. Finally, at the time the Motion was filed, Mr. Nida suggested that an additional $2,100 in anticipated fees would be incurred for preparing a reply brief, and for appearing before the Court. (Nida Decl. ¶ 18.) Counsel's failure to oppose the Motion obviated any need to file a reply brief. However, the Court awards fees incurred for attending the hearing held on July 2, 2007 in the amount of $1,050.

Pursuant to Rule 11, sanctions may be imposed on attorneys, law firms, or parties. Fed. R. Civ. P. 11(c). However, monetary sanctions may not be imposed on a represented party to the extent the pleadings are legally frivolous. Fed. R. Civ. P.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

**PRIORITY SEND**

11(c)(2)(A); see also Skidmore Energy, Inc. v. KPMG, 455 F.3d 564, 567 (5th Cir. 2006) (noting that Rule 11 prohibits imposition of monetary sanctions against a represented party "concerning legally frivolous pleadings, which are peculiarly within the province of lawyers"); Salovaara v. Eckert, 222 F.3d 19, 34 n. 11 (2d Cir. 2000) (finding that a district court erroneously imposed sanctions on a represented party to the extent the offending document was legally frivolous). Where there is no principled basis to apportion sanctions between a plaintiff and his counsel, courts have imposed joint and several liability. See, e.g., Kendrick v. Zanides, 609 F. Supp. 1162, 1173 (N.D. Cal. 1985) ("Nothing in the record indicates that as between client and counsel, one should be regarded as less blameworthy than the other.

Based on the record presently before the Court, it appears that Counsel bears responsibility for the Complaint's infirmities as to the Estate. Counsel shall therefore be liable for $11,200 in sanctions.

### V. CONCLUSION

For the reasons set forth above, Lola Krugel is awarded $11,200 in attorneys' fees as sanctions payable by Counsel. Mrs. Krugel may seek costs when obtaining a judgment, if a judgment is appropriate.

IT IS SO ORDERED.

Initials of Deputy Clerk _JL_